# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA MANDELSTEIN and MICHELLE MANDELSTEIN, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-cv-9216 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| LINDA RUKIN and MOONSTONE ASSET MANAGEMENT, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Barbara Mandelstein ("Barbara") and Michelle Mandelstein ("Michelle") bring this diversity action against Defendants Linda Rukin ("Rukin") and Moonstone Asset Management, Inc. ("Moonstone") for tortious interference (Count I and III) and unjust enrichment (Counts II and IV). Currently before the Court are Rukin's motion to dismiss the complaint for failure to state a claim [12], Moonstone's motion to dismiss the complaint for failure to state a claim [22], and Plaintiffs' motion to strike Rukin's reply brief [27]. Plaintiffs' motion to strike [27] is denied for the reasons explained on the record on June 7, 2018. See [38]. Rukin's motion to dismiss [12] and Moonstone's motion to dismiss [22] are both denied without prejudice. This action is stayed pending the final resolution of any appeals from the November 15, 2017 Ruling and Order of the Illinois Circuit Court, Probate Division, in Case No. 14 P 899. Although the Illinois Appellate Court issued its ruling on August 31, 2018 (Appeal No. 2-17-1009), the time has not yet expired to file a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court. The parties are ordered to file a joint status report by October 10, 2018 informing the Court

of the status of the state court appeal—*i.e.*, whether a petition for rehearing or for leave to appeal has been filed or, alternatively, that the state court appellate process has come to an end.

I.     **Background**[1]

Plaintiffs Barbara, a citizen of Florida, and her daughter Michelle, a citizen of New York, are the direct and only beneficiaries of the estate of Leslie Mandelstein (the "Leslie Estate"). Defendant Rukin, a citizen of Illinois, is Leslie's sister and the sole beneficiary of the estate of their father, Lester Mandelstein (the "Lester Estate").[2]

Before they died, Lester Mandelstein ("Lester") and Leslie Mandelstein ("Leslie") operated three separate successful financial planning businesses with nearly $20,000,000 in assets under management. The complaint refers to three businesses—Lester's sole proprietorship, Leslie's sole proprietorship, and the Custom Planning Group, LLC ("CPG")—collectively as the "Business."

Leslie died on August 31, 2014. At the time of Leslie's death, his sole proprietorship had 48 clients with approximately $7.5 million in assets under management, Lester had 44 clients with approximately $12.7 million in assets under management, and CPG had 27 clients with approximately $3.9 million in assets under management. At the time of Leslie's death, CPG was worth $72,693.00, Lester's sole proprietorship was worth $256,784.64, and Leslie's sole

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiffs' complaint. See [1]; *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). Where relevant, the Court also takes judicial notice of documents filed in the Probate Division of the Illinois Circuit Court of the Nineteenth Judicial Circuit, Case No. 14 P 899 (the "Probate Case") and the appeal therefrom to the Appellate Court of Illinois Second Judicial Circuit, Case No. 2-17-1009. See *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss" (citing *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016))); *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015) (court may take judicial notice of matters of public record without converting 12(b)(6) motion into motion for summary judgment).

[2] Because so many of the relevant players in the dispute have the same last name, the Court uses first names where necessary to avoid confusion.

proprietorship was worth $154,925.88. Within days of Leslie's death, Lester offered Barbara $200,000 to purchase Leslie's share of the Business, including Leslie's sole proprietorship. Barbara accepted. But Rukin disagreed with the payment because it would reduce the benefit she would receive from a sale of the Business. The transaction was never completed.

Instead, the complaint alleges, Lester attempted to move all of Leslie's clients to himself and, with the assistance of Rukin, hid client files, and locked Barbara out of the office. Within months, Lester sold "his" clients to Moonstone for cash and future consideration—including an employment contract for Rukin, who also continued to receive 50% of commissions on the accounts transferred to Moonstone. Lester concealed all of this from the Leslie estate.

In February 2015, Barbara, as Independent Executor of the Leslie Estate, filed the Probate Case against CPG and Lester in Illinois Circuit Court to recover Leslie's interest in CPG. The complaint contained the following counts: demand for accounting to CPG; breach of fiduciary duty against Lester; constructive trust against Lester and CPG; conversion against Lester; and dissociation from LLC/purchase of Decedent's membership interest.

Lester died during the course of the Probate Case and his estate was substituted as a defendant. Rukin was appointed administrator of the Lester Estate. In July 2015, Paulson Wealth Management ("Paulson") offered to purchase all of the Business accounts for $500,000.

On November 15, 2017, the Probate Court issued its final Ruling and Order in the Probate Case. Plaintiffs attach the Ruling and Order as an exhibit to their complaint. See [1] at 13. The Ruling and Order summarizes Barbara's position in the Probate Case as follows: CPG was a "consolidated" entity that consisted of Lester's clients, Leslie's clients, and CPG's clients. [1] at 18. Pursuant to the Illinois LLC Act, Leslie's estate was entitled to the fair value of 50% of CPG at the time of Leslie's passing, which was $242,201. Lester owed Leslie a fiduciary duty as a

member of CPG, which was breached when Lester "locked the office, hid the files, transferred the clients into his name, and sold the business without paying Leslie's estate anything." [1] at 20. Barbara requested "in the alternative that if the Court finds that CPG did not include Lester and Leslie's sole proprietorship then 50% of CPG and Leslie's sole proprietorship would total $191,423.88[.]" *Id*. at 21.

The Probate Court summarized the defendants' arguments as follows: There was no consolidated CPG but instead "three separate businesses: the sole proprietorship of Lester, the sole proprietorship of Leslie, and CPG." [1] at 22. Lester did not owe Leslie any fiduciary duty once Leslie died. Instead, the only duty Lester owed was under the Illinois LLC Act to purchase a distributional interest of the member for its fair value. Leslie's death terminated his relationship with his clients, who were free to choose a new person to service their accounts.

The Probate Court concluded that the evidence supported the existence of three separate business entities—Lester's sole proprietorship, Leslie's sole proprietorship, and CPG—rather than a consolidated CPG. According to the Probate Court, "[t]his case is about CPG only, nothing has been pled regarding Leslie's Sole Proprietorship." [1] at 3, 25. The Probate Court concluded that the Leslie Estate was entitled to $19,707 for Leslie's share of CPG, plus $17,000 for advisory fees earned by Leslie prior to his death. See *id*. at 30. The Court further concluded that "Lester did not owe Leslie any fiduciary duty as a member of CPG after Leslie died except to buy out Leslie's interest pursuant to statute," that "[t]he clients that were CPG's clients could no longer be shared with Leslie after Leslie's death due to the restrictions on receipt of investment advisory fees under the law," and that "[a]ll the arguments about Lester stealing Leslie's clients, changing the locks, hiding the files and not involving Barbara in the future sale of the business amount to nothing." *Id*. at 27-28. The Probate Court declined to award either party punitive damages, concluding that

although "[t]he animosity between Barbara and [Rukin] was evident," it did not rise to the level of "an 'evil motive' or 'reckless indifference' or other outrageous conduct that would allow for attorney's fees, costs, expenses or punitive damages for the Plaintiff." *Id*. at 29.

Both parties appealed the Probate Court's final Ruling and Order. Additionally, on December 21, 2017, Plaintiffs filed the instant lawsuit against Rukin and Moonstone. In their tortious interference claim against Moonstone (Count I), Plaintiffs allege that Moonstone intentionally interfered with their receiving any value for Leslie's sole proprietorship by intentionally revising the purchase agreement language to conceal that the sale included Leslie's sole proprietorship; purchasing the sole proprietorship without paying full value "by concealing it within the Business"; paying Rukin to facilitate the transfer of Leslie's sole proprietorship; and concealing the purchase of the sole proprietorship from Plaintiffs. The tortious interference claim against Rukin (Count II) alleges that she locked Plaintiffs out of the office and hid files immediately before and after Leslie's death; transferred clients from Leslie's sole proprietorship to Lester and then to Moonstone; and concealed the sale of Leslie's sole proprietorship to Moonstone. In the unjust enrichment claim against Moonstone (Count III), Plaintiffs allege that Moonstone benefitted from receiving Leslie's sole proprietorship "at a steep discount" without paying anything to Leslie's heirs and that it would be inequitable to retain those benefits. [1] at 8. The unjust enrichment claim against Rukin (Count IV) alleges that she unfairly benefitted from selling Leslie's sole proprietorship without paying anything to Leslie's heirs. In both tortious interference claims, Plaintiffs allege that they "suffered damages as a result of the loss of [their] inheritance in the amount of $154,925.88." [1] at 7, 10.

On January 18, 2018, Rukin filed a motion to dismiss the complaint. Rukin argues that the doctrines of res judicata and collateral estoppel bar Plaintiffs' claims and that Plaintiffs fail to

5

allege all the essential elements of their tortious interference and unjust enrichment claims. On March 5, 2018, Moonstone filed its own motion to dismiss the complaint, arguing that Plaintiffs' claims against it are barred by collateral estoppel and fail to plead all essential elements.

On April 10, 2018, Barbara filed her brief in her appeal from the Probate Court's final Ruling and Order. The Court takes judicial notice of the appellate brief. See [38]. In her "Statement of the Case," Barbara summarizes the parties' dispute as follows:

> Lester[] and Leslie[], both now deceased, were equal members of a successful financial planning business with nearly $20,000,000 in assets under management, [CPG] and two sole proprietorships operating under the same roof with shared expenses. Leslie died on August 31, 2014 and Lester continued with the three business and eventually sold all three, without making any distribution to Leslie's Estate, instead giving the proceeds to [] Rukin.
>
> Sadly, as was made clear at trial, rather than distributing Leslie's share of the business to Leslie's widow, [Barbara], immediately following Leslie's death, Lester greedily attempted to move all the clients to himself from both Leslie's sole proprietorship and Leslie's clients in CPG. Lester literally hid client files and physically locked Barbara out of the office when Leslie became gravely ill in order to achieve the transition of Leslie's clients to Lester.
>
> Mere months later, after finagling CPG's and Leslie's accounts, Lester sold "his" clients to [Moonstone] for cash and future consideration including, apparently, lucrative employment for his dependent daughter Rukin who also continues to receive 50% of commissions on the accounts transferred to Moonstone through Lester's Trust. Further, Lester concealed his negotiations and eventual sale to Moonstone from Leslie's Estate. As a result of Lester's treachery, Leslie's wife and daughter were left with nothing from Leslie's business while Lester and Rukin took the full benefit. ***

[26-1] at 5-6. Barbara also argued in her appellate brief that the Probate Court erred as a matter of law by holding that Leslie's sole proprietorship was not at issue in the pleadings in the case. See *id*. at 3, 30-32. According to Barbara, the Circuit Court "erred in rigidly construing the pleadings and not at least finding the construction of the pleadings was waived," given that "Plaintiff's expert was allowed to opine without objection as to the value of Leslie's sole proprietorship" and

"Plaintiff's pre-trial and post-trial briefs *** argued the value of Leslie's sole proprietorship." *Id*. at 32.

On August 31, 2018, the Illinois Appellate Court issued an order affirming the Probate Court. The Illinois Appellate Court held that (1) the Probate Court did not abuse its discretion in denying the Leslie Estate's motion for leave to file a jury demand; (2) the Probate Court did not err as a matter of law in finding that Lester and CPG did not owe a fiduciary duty to the Leslie Estate; (3) the Probate Court did not abuse its discretion in denying the Leslie Estate's request for expenses pursuant to section 35-65(d) of the Limited Liability Company Act; and (4) the Probate Court did not err as a matter of law in concluding that the Leslie Estate failed to plead a cause of action for recovery of the value of Leslie's sole proprietorship. The Leslie Estate has 21 days from the date of the Illinois Appellate Court's entry of judgment to file a petition for rehearing. See Ill. Sup. Ct. R. 367(a). If a petition for rehearing is not filed, the Leslie Estate has 35 days from the date of the Illinois Appellate Court's entry of judgment to file a petition for leave to appeal to the Illinois Supreme Court. See Ill. Sup. Ct. R. 315(b).

## II.     Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the

complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

A plaintiff need not anticipate affirmative defenses in its complaint, but it may "plead itself out of court" by "set[ting] forth everything necessary to satisfy the affirmative defense." *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005) (citing *Leavell v. Kieffer,* 189 F.3d 492, 495 (7th Cir.1999)). Thus, affirmative defenses like res judicata and collateral estoppel may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6) if the "plaintiff has plead himself out of court "by alleging (and thus admitting) the ingredients of a defense." *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015).

### III. Analysis

The Court begins with Rukin's argument that Plaintiffs' claims are barred by the doctrine of res judicata. The Court applies Illinois' law of res judicata to this diversity action. See *Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). Under Illinois law, "[t]hree requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Gurga v. Roth*, 964 N.E.2d 134, 140 (Ill. App. 2011); see also *Parungao*, 858 F.3d at 457; *Rose v. Bd. of Election Comm'rs for the City of Chicago*, 815 F.3d 372, 374 (7th Cir. 2016). If these requirements are satisfied, "the plaintiff is barred from raising 'not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit.'" *Parungao*, 858 F.3d at 457 (quoting *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011)).

8

In this case, all three requirements of *res judicata* are disputed. As to finality, Plaintiffs argue that "there was never a final adjudication as to Leslie's Sole Proprietorship" in the Probate Court because the Probate Court held that "'[t]his case is about CPG only, nothing has been pled regarding Leslie's Sole Proprietorship.'" [24] at 4. Plaintiffs' argument, however, conflates the requirement of finality with the requirement of an identity of causes of action. Rukin focuses on the proper analysis, arguing that "[a]lthough the Final Judgment is currently being appealed, it still 'can serve as the basis to apply the doctrines of *res judicata* and collateral estoppel.'" [12] at 4 (quoting *Langone v. Schad, Diamond & Shedden, P.C.*, 943 N.E.2d 673, 687 (Ill. App. 2010), *as modified on denial of reh'g* (Jan. 18, 2011)). But the case on which Rukin relies, *Langone*, also recognizes that "there exists a split of authority [in Illinois] on the question of whether an order is final for purposes of *res judicata* when an appeal is pending," and the Illinois Supreme Court "continues to cite *Ballweg v. City of Springfield*, 499 N.E.2d 1373 (Ill. 1986), for the proposition that '[f]or the purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted.'" *Langone*, 943 N.E.2d at 687 (quoting *In re A.W.*, 896 N.E. 2d 316, 321 (Ill. 2008)). Further, "two of the state's intermediate appellate courts have extended *Ballweg* from issue preclusion" (collateral estoppel) "to claim preclusion" (res judicata). *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) (citing *Luckett v. Human Rights Commission*, 569 N.E.2d 6, 10 (Ill. App. 1989); *Pelon v. Wall*, 634 N.E.2d 385, 388 (Ill. App. 1994)).

Given this confusion, the Seventh Circuit has "blunt[ly]" stated that it has "no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment" and advised that "a stay rather than immediate decision is the prudent course" in cases where the plaintiffs have filed a federal lawsuit that appears to be duplicative of an Illinois

9

state court judgment that is currently on appeal. *Id*.; see also *Thompson v. City of Chicago Bd. of Ed.*, 2016 WL 362375, at *3 (N.D. Ill. Jan. 29, 2016) ("Illinois law is unclear on whether a trial court's judgment is final for purposes of claim preclusion during the pendency of an appeal"). The Seventh Circuit reasoned that "[a] federal judge confronted with duplicative litigation need not barge ahead on the off-chance of beating the state court to a conclusion." *Rogers*, 58 F.3d at 302. Instead, "[i]t is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion." *Id*.; see also, e.g., *Baek v. Clausen*, 886 F.3d 652, 775 (7th Cir. 2018) (district court did not abuse its discretion, but instead "demonstrated sound judgment," when it stayed RICO action by borrower and guarantors against lender pending resolution of state court proceedings between the parties). Based on the Seventh Circuit's advice and its own analysis of the second and third requirements of res judicata (discussed immediately below), the Court adopts the "prudent course" and stays this action pending the final resolution of Barbara's appeal from the Probate Court's final Order and Ruling. When the state court appellate process is concluded, Defendants will be given an opportunity to file new motions to dismiss, to the extent they wish to do so at that time.

Turning to the other two requirements for res judicata, there appears to be an identity of causes of action in this case and in the Probate Case. Illinois uses a "transactional test" to determine whether two lawsuits involve the same "cause of action." See *Parungao*, 858 F.3d at 457; *Potash Corp.*, 664 F.3d at 1079-80. Under this test, separate claims are considered to be the same "cause of action" if they "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Parugao*, 858 F.3d at 457. "There need not be a 'substantial overlap of evidence,' so long as the complaints arise from the same transaction or 'series of connected transactions.'" *Id*. (quoting *Potash Corp*. 665, F.3d at 1080).

10

It is apparent from the Court's review of Plaintiffs' complaint, the Probate Court's Order and Ruling, and Barbara's appellate brief that the two lawsuits arise out of a single group of operative facts. In both cases, the plaintiffs contend that immediately before and following Leslie's death, Lester locked Barbara out of the office, hid files, stole Leslie's clients, sold the clients to Moonstone, and refused to share any of the proceeds of the sale with the beneficiaries of Leslie's Estate. In both lawsuits, the plaintiffs seek compensation for the loss of Barbara and Michelle's inheritance from Leslie—in particular, the value of Leslie's sole proprietorship. Compare Plaintiffs' complaint in this case, [1] at 7, 10 (alleging that Plaintiffs "suffered damages as a result of the loss of [their] inheritance in the amount of $154,925.88"), with Barbara's appellate brief in the Probate Case, [26-1] at 17 (explaining that Barbara's expert opined that Leslie's sole proprietorship was worth $154,925.88).

Plaintiffs argue that this case involves a different cause of action because they allege certain "operative facts committed by Rukin personally that her father's estate would not be liable for: Hiding files from Barbara immediately after Leslie's death, concealing the sale of Leslie's sole proprietorship to Moonstone, transferring clients from Leslie's sole proprietorship to Lester immediately following Leslie's death and receiving employment from Moonstone in exchange for transferring Leslie's Sole Proprietorship." [24] at 7. However, whether Lester's estate would "be liable" for Rukin's role in these alleged actions is not the focus of the Court's analysis. Instead, the Court must examine whether the two cases involve the same group of operative facts. A comparison of Plaintiffs' complaint with Barbara's appellate brief in the Probate Case confirms that they do. The complaint alleges that Lester "literally hid client files and physically locked Barbara out of the office before Leslie's body was cold," [1] at 3, while the appellate brief asserts that "Lester literally hid client files and physically locked Barbara out of the office when Leslie

became gravely ill," [[26-1] at 5-6. The complaint alleges that "Lester greedily attempted to move all the clients to himself, with the assistance of Rukin," [1] at 3, while the appellate brief contends that "Lester greedily attempted to move all the clients to himself from both Leslie's sole proprietorship and Leslie's clients in CPG," [26-1] at 5. The complaint and the appellate brief both assert, in identical words, that "Lester concealed his negotiations and eventual sale to Moonstone from Leslie's Estate." [1] at 3; [26-1] at 5. And the complaint and appellate brief also assert, in identical words, that Rukin "continues to receive 50% of commissions on the accounts transferred to Moonstone." [1] at 3; [26-1] at 5.

Plaintiffs also argue that that this case involves a different cause of action because "[i]n this action, unlike the previous action, Plaintiffs rely on operative facts regarding Moonstone's conduct in acquiring Leslie's Sole Proprietorship including: (1) revising the Purchase Agreement language from what was originally offered to specifically exclude Leslie's Sole Proprietorship; (2) purchasing Leslie's Sole Proprietorship without paying full value for it; (3) paying Rukin to facilitate the transfer of Leslie's Sole Proprietorship to Moonstone; (4) assisting in the transfer of Leslie's clients to Lester; and (5) concealing the purchase of Leslie's Sole Proprietorship from Barbara and Michelle." [24] at 7. But these alleged facts simply add additional detail to Barbara's contention in the Probate Case that "Lester concealed his negotiations and eventual sale to Moonstone from Leslie's Estate" and "[a]s a result of Lester's treachery, Leslie's wife and daughter were left with nothing from Leslie's business while Lester and Rukin took the full benefit." [26-1] at 6. It is not necessary for purposes of res judicata to have a "substantial overlap of evidence, so long as [the claims] arose from the same transaction." *BMO Harris Bank, N.A. v. K & K Holdings, LLC*, 59 N.E.3d 807, 811 (Ill. App. 2016). Plaintiffs' claims in this case arise

from the same transaction at issue in the Probate Case: the sale of Leslie's sole proprietorship to Moonstone without compensating Leslie's estate.

Plaintiffs contend further that the two causes of action are not identical because the Probate Court held that "[t]his case is about CPG only, nothing has been pled regarding Leslie's Sole Proprietorship." [24] at 5. It is true that the Probate Court determined that Barbara's complaint did not allege a claim for the value of Leslie's sole proprietorship. But regardless of any pleading deficiency, it is clear from the face of the Probate Court's Order and Ruling that the Leslie Estate's entitlement to the value of Leslie's sole proprietorship *was* an issue in the Probate Case. The Probate Court decided that the Business was not one "consolidated CPG" (as Barbara argued) but instead consisted of CPG (an LLC), Lester's sole proprietorship, and Leslie's sole proprietorship. Indeed, Barbara argues on appeal that the Probate Court "erred in rigidly construing the pleadings and not at least finding the construction of the pleadings was waived," given that "Plaintiff's expert was allowed to opine without objection as to the value of Leslie's sole proprietorship" and "Plaintiff's pre-trial and post-trial briefs *** argued the value of Leslie's sole proprietorship." [26-1] at 32. Further, even if Barbara had not raised the Leslie Estate's entitlement to the value of Leslie's sole proprietorship in the Probate Case, it is evident that this issue *could* have been raised and decided, which is all that is required for purposes of applying res judicata. See *Parungao*, 858 F.3d at 457; *Baek*, 886 F.3d at 660; cf. *Gurga*, 964 N.E.2d at 140 ("[P]robate courts are courts of general jurisdiction and are empowered to hear and decide all justiciable matters.").

The final requirement for the application of res judicata is that the two actions involve identical parties or their privies. Plaintiffs are in privity with the Leslie Estate (the plaintiff in the Probate Case) because they are beneficiaries of the estate, and Rukin is in privity with the Lester Estate (the Defendant in the Probate Case) for the same reason. The Illinois Appellate Court,

13

relying on the RESTATEMENT (SECOND) OF JUDGMENTS, has explained that one of the "general categories of relationships that may establish privity" is "relationships that are 'explicitly representative,'" including in particular "the executor *** of an interest in which the nonparty is a beneficiary." *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 589 (Ill. App. 2009) (emphasis added); see also *Diversified Financial Systems, Inc. v. Boyd*, 678 N.E.2d 308, 311 (Ill. App. 1997). Plaintiffs do not address this case law.

Instead, Plaintiffs argue that Rukin's privity with the Lester Estate cannot be decided on a motion to dismiss because Leslie "and his daughter have very different interests and different exposure." [24] at 8. According to Plaintiffs, "Lester was able to plead many possible counter-claims against his business partner, Leslie, while Rukin cannot"; "Lester's risk when litigating with Leslie was less due to his available counterclaims Rukin does not possess"; and "Rukin has personal liability for acts and omissions separate from Lester that she committed after Lester and Leslie died." [24] at 8. The Court fails to see how Lester's ability to raise counterclaims is relevant to the privity analysis. Rukin's motion to dismiss addresses Plaintiff's claims, rather than any claims she or her father might have had. Further, contrary to Plaintiffs' argument, the complaint does not allege any acts or omissions committed by Rukin after Lester died.

Plaintiffs also argue that "Defendants cannot possibly prove privity between Michelle and the Estate of Leslie Mandelstein" because as an heir she is "allowed to pursue a claim after the estate representing her interests failed on the same claim." [24] at 8. Plaintiffs' argument relies on *Smith v. Bishop*, 187 N.E.2d 217 (1962). The plaintiff, Smith, was involved in an automobile accident with a milk truck. Smith survived but two of her minor children did not. Smith, as next of kin, was a beneficiary in a wrongful death action brought against the defendants (the milk truck driver and his employer) by the administrator of the children's estates. The Illinois Supreme Court

14

held that res judicata did not bar Smith from bringing another suit against the defendants for her own personal injuries. See *id*. at 219. The Supreme Court reasoned that "Smith did not acquire her rights in this action from the administrator of the children's estates, nor is her relationship to such rights either mutual with or successive to that of the administrator." *Id*. That reasoning is inapplicable here. Michelle, unlike Smith, acquired her rights in this action from the Leslie Estate. Michelle and her mother sue on theories of unjust enrichment and tortious interference to recover their alleged interest in the value of Leslie's sole proprietorship. Michelle's alleged interest in the proceeds of the sale of Leslie's sole proprietorship flows from her status as a beneficiary of Leslie's estate.

For these reasons, the Court concludes that Plaintiffs claims against Rukin may be barred by res judicata once the appeal from the Probate Court's final Ruling and Order (or any proceedings on remand therefrom) are concluded. Therefore, the Court will stay this action until the appeals have concluded. Although Moonstone's motion to dismiss raises somewhat different arguments than Rukin's, the Court concludes that the most prudent course is to stay the entire action without addressing the merits of Moonstone's motion or the other arguments raised in Rukin's motion. This will avoid piecemeal litigation and rulings that could potentially conflict with the state courts' work. Once the state court appeals have been exhausted, the parties will have a complete record from which they can argue here, and will be allowed to file new motions to dismiss if they so choose.

IV.     **Conclusion**

For these reasons, Plaintiffs' motion to strike [27] is denied and Rukin's motion to dismiss [12] and Moonstone's motion to dismiss [22] are denied without prejudice. This action is stayed pending the final resolution of any appeals from the November 15, 2017 Ruling and Order of the

Illinois Circuit Court, Probate Division, in Case No. 14 P 899.  The parties are ordered to file a joint status report by October 10, 2018 informing the Court of the status of the state court appellate proceedings.

Dated: September 14, 2018

_____
Robert M. Dow, Jr.
United States District Judge