**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BARBARA MANDELSTEIN and MICHELLE MANDELSTEIN, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-cv-9216 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| LINDA RUKIN and MOONSTONE ASSET MANAGEMENT, INC., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Barbara Mandelstein ("Barbara") and Michelle Mandelstein ("Michelle") bring this diversity action against Defendants Linda Rukin ("Rukin") and Moonstone Asset Management, Inc. ("Moonstone") for tortious interference (Counts I and III) and unjust enrichment (Counts II and IV). The Court previously denied without prejudice Rukin's motion to dismiss the complaint for failure to state a claim [12] and Moonstone's motion to dismiss the complaint for failure to state a claim [22], pending the final resolution of any appeals from the November 15, 2017 Ruling and Order of the Illinois Circuit Court, Probate Division, in Case No. 14 P 899. The deadlines to file a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court have passed, and Plaintiff voluntarily dismissed Defendant Rukin, leaving only Counts I and II against Moonstone. Currently before the Court is Defendant's renewed motion to dismiss for failure to state a claim [54]. Defendant's motion to dismiss [54] is granted, and the Complaint [1] is dismissed with prejudice. Civil case terminated.

## I.     Background[1,2]

Plaintiffs Barbara, a citizen of Florida, and her daughter Michelle, a citizen of New York, are the direct and only beneficiaries of the estate of Leslie Mandelstein (the "Leslie Estate"). Linda Rukin, a citizen of Illinois, is Leslie's sister and the sole beneficiary of the estate of their father, Lester Mandelstein (the "Lester Estate").[3]

Before they died, Lester Mandelstein ("Lester") and Leslie Mandelstein ("Leslie") operated three separate successful financial planning businesses with nearly $20,000,000 in assets under management. The complaint refers to three businesses that Lester and Leslie operated—Lester's sole proprietorship, Leslie's sole proprietorship, and the Custom Planning Group, LLC ("CPG")—collectively as the "Business."

Leslie died on August 31, 2014. At the time of Leslie's death, his sole proprietorship had 48 clients with approximately $7.5 million in assets under management, Lester had 44 clients with approximately $12.7 million in assets under management, and CPG had 27 clients with approximately $3.9 million in assets under management. At the time of Leslie's death, CPG was worth $72,693.00, Lester's sole proprietorship was worth $256,784.64, and Leslie's sole

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiffs' complaint. See [1]; *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). Where relevant, the Court also takes judicial notice of documents filed in the Probate Division of the Illinois Circuit Court of the Nineteenth Judicial Circuit, Case No. 14 P 899 (the "Probate Case") and the appeal therefrom to the Appellate Court of Illinois Second District, Case No. 2-17-1009. See *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss" (citing *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016))); *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015) (court may take judicial notice of matters of public record without converting 12(b)(6) motion into motion for summary judgment).

[2] The key facts have not changed since the Court's September 14, 2018 Memorandum Order and Opinion [41] was issued, with the exception of a few procedural developments. This order draws on the background section from the previous order [41] and adds information regarding subsequent developments as necessary.

[3] Because so many of the relevant players in the dispute have the same last name, the Court uses first names where necessary to avoid confusion.

proprietorship was worth $154,925.88.  Plaintiff alleges that within days of Leslie's death, Lester offered Barbara $200,000 to purchase Leslie's share of the Business, including Leslie's sole proprietorship.  Barbara accepted.  But Rukin disagreed with the payment because it would reduce the benefit she would receive from a sale of the Business.  The transaction was never completed.

Instead, the complaint alleges, Lester attempted to move all of Leslie's clients to himself and, with the assistance of Rukin, hid client files, and locked Barbara out of the office.  Within months, Lester sold "his" clients to Moonstone for cash and future consideration—including an employment contract for Rukin, who also continued to receive 50% of commissions on the accounts transferred to Moonstone.  Plaintiffs allege that Lester concealed all of this from the Leslie estate, with Moonstone's assistance.

In February 2015, Barbara, as Independent Executor of the Leslie Estate, filed the Probate Case against CPG and Lester in Illinois Circuit Court to recover Leslie's interest in CPG.  The complaint contained the following counts: demand for accounting to CPG; breach of fiduciary duty against Lester; constructive trust against Lester and CPG; conversion against Lester; and dissociation from LLC/purchase of Decedent's membership interest.

Lester died during the course of the Probate Case and his estate was substituted as a defendant.  Rukin was appointed administrator of the Lester Estate.  In July 2015, Paulson Wealth Management ("Paulson") offered to purchase all of the Business accounts for $500,000.

On November 15, 2017, the Probate Court issued its final Ruling and Order in the Probate Case.  Plaintiffs attach the Ruling and Order as an exhibit to their complaint.  See [1] at 13.  The Ruling and Order summarizes Barbara's position in the Probate Case as follows: CPG was a "consolidated" entity that consisted of Lester's clients, Leslie's clients, and CPG's clients.  [1] at 18.  Pursuant to the Illinois LLC Act, Leslie's estate was entitled to the fair value of 50% of CPG

3

at the time of Leslie's passing, which was $242,201. Lester owed Leslie a fiduciary duty as a member of CPG, which was breached when Lester "locked the office, hid the files, transferred the clients into his name, and sold the business without paying Leslie's estate anything." [1] at 20. Barbara requested "in the alternative that if the Court finds that CPG did not include Lester and Leslie's sole proprietorship then 50% of CPG and Leslie's sole proprietorship would total $191,423.88[.]" *Id*. at 21.

The Probate Court summarized the defendants' arguments as follows: There was no consolidated CPG but instead "three separate businesses: the sole proprietorship of Lester, the sole proprietorship of Leslie, and CPG." [1] at 22. Lester did not owe Leslie any fiduciary duty once Leslie died. Instead, the only duty Lester owed was under the Illinois LLC Act to purchase a distributional interest of the member for its fair value. Leslie's death terminated his relationship with his clients, who were free to choose a new person to service their accounts.

The Probate Court concluded that the evidence supported the existence of three separate business entities—Lester's sole proprietorship, Leslie's sole proprietorship, and CPG—rather than a consolidated CPG. According to the Probate Court, "[t]his case is about CPG only, nothing has been pled regarding Leslie's Sole Proprietorship." [1] 25. The Probate Court concluded that the Leslie Estate was entitled to $19,707 for Leslie's share of CPG, plus $17,000 for advisory fees earned by Leslie prior to his death. See *id*. at 30. The Court further concluded that "Lester did not owe Leslie any fiduciary duty as a member of CPG after Leslie died except to buy out Leslie's interest pursuant to statute," that "[t]he clients that were CPG's clients could no longer be shared with Leslie after Leslie's death due to the restrictions on receipt of investment advisory fees under the law," and that "[a]ll the arguments about Lester stealing Leslie's clients, changing the locks, hiding the files and not involving Barbara in the future sale of the business amount to nothing."

*Id*. at 27-28.  The Probate Court declined to award either party punitive damages, concluding that although "[t]he animosity between Barbara and [Rukin] was evident," it did not rise to the level of "an 'evil motive' or 'reckless indifference' or other outrageous conduct that would allow for attorney's fees, costs, expenses or punitive damages for the Plaintiff." *Id*. at 29.

Both parties appealed the Probate Court's final Ruling and Order.  Additionally, on December 21, 2017, Plaintiffs filed the instant lawsuit against Rukin and Moonstone.  In their tortious interference claim against Moonstone (Count I), Plaintiffs allege that Moonstone intentionally interfered with their receiving any value for Leslie's sole proprietorship by intentionally revising the purchase agreement language to conceal that the sale included Leslie's sole proprietorship; purchasing the sole proprietorship without paying full value "by concealing it within the Business"; paying Rukin to facilitate the transfer of Leslie's sole proprietorship; and concealing the purchase of the sole proprietorship from Plaintiffs.  In the unjust enrichment claim against Moonstone (Count II), Plaintiffs allege that Moonstone benefitted from receiving Leslie's sole proprietorship "at a steep discount" without paying anything to Leslie's heirs and that it would be inequitable to retain those benefits.  [1] at 8.  Plaintiffs pled similar claims against Rukin in Counts III and IV.[4]  In the tortious interference claim against Moonstone, Plaintiffs allege that they "suffered damages as a result of the loss of [their] inheritance in the amount of $154,925.88."  [1] at 7.

On January 18, 2018, Rukin filed a motion to dismiss the complaint.  Rukin argued that the doctrines of res judicata and collateral estoppel barred Plaintiffs' claims and that Plaintiffs failed to allege all the essential elements of their tortious interference and unjust enrichment

---

[4] Plaintiff later voluntarily dismissed the claims against Rukin with prejudice.  See [43] and [47].

claims. On March 5, 2018, Moonstone filed its own motion to dismiss the complaint, arguing that Plaintiffs' claims against it are barred by collateral estoppel and fail to plead all essential elements.

On April 10, 2018, Barbara filed her brief in her appeal from the Probate Court's final Ruling and Order. The Court takes judicial notice of the appellate brief. See [38]. In her "Statement of the Case," Barbara summarizes the parties' dispute as follows:

> Lester[] and Leslie[], both now deceased, were equal members of a successful financial planning business with nearly $20,000,000 in assets under management, [CPG] and two sole proprietorships operating under the same roof with shared expenses. Leslie died on August 31, 2014 and Lester continued with the three business and eventually sold all three, without making any distribution to Leslie's Estate, instead giving the proceeds to [] Rukin.

> Sadly, as was made clear at trial, rather than distributing Leslie's share of the business to Leslie's widow, [Barbara], immediately following Leslie's death, Lester greedily attempted to move all the clients to himself from both Leslie's sole proprietorship and Leslie's clients in CPG. Lester literally hid client files and physically locked Barbara out of the office when Leslie became gravely ill in order to achieve the transition of Leslie's clients to Lester.

> Mere months later, after finagling CPG's and Leslie's accounts, Lester sold "his" clients to [Moonstone] for cash and future consideration including, apparently, lucrative employment for his dependent daughter Rukin who also continues to receive 50% of commissions on the accounts transferred to Moonstone through Lester's Trust. Further, Lester concealed his negotiations and eventual sale to Moonstone from Leslie's Estate. As a result of Lester's treachery, Leslie's wife and daughter were left with nothing from Leslie's business while Lester and Rukin took the full benefit. ***

[26-1] at 5-6. Barbara also argued in her appellate brief that the Probate Court erred as a matter of law by holding that Leslie's sole proprietorship was not at issue in the pleadings in the case. See *id*. at 3, 30-32. According to Barbara, the Circuit Court "erred in rigidly construing the pleadings and not at least finding the construction of the pleadings was waived," given that "Plaintiff's expert was allowed to opine without objection as to the value of Leslie's sole proprietorship" and "Plaintiff's pre-trial and post-trial briefs *** argued the value of Leslie's sole proprietorship." *Id*. at 32.

On August 31, 2018, the Illinois Appellate Court issued an order affirming the Probate Court. The Appellate Court specifically held that (1) the Probate Court did not abuse its discretion in denying the Leslie Estate's motion for leave to file a jury demand; (2) the Probate Court did not err as a matter of law in finding that Lester and CPG did not owe a fiduciary duty to the Leslie Estate; (3) the Probate Court did not abuse its discretion in denying the Leslie Estate's request for expenses pursuant to section 35-65(d) of the Limited Liability Company Act; and (4) the Probate Court did not err as a matter of law in concluding that the Leslie Estate failed to plead a cause of action for recovery of the value of Leslie's sole proprietorship. On September 14, 2018, this Court denied without prejudice Rukin's motion to dismiss the complaint for failure to state a claim [12] and Moonstone's motion to dismiss the complaint for failure to state a claim [22]. See [41]. Although the Illinois Appellate Court issued its ruling on August 31, the Leslie Estate's time to file a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court had not yet expired. The Court noted a split in Illinois authority on the question of whether an order is final for purposes of res judicata when an appeal is pending and, following the "prudent course" urged by the Seventh Circuit, stayed the case until the appeals had concluded. See *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995).

The Leslie Estate did not file a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court within the respective deadlines. See [42]. Plaintiffs then voluntarily dismissed the claims against Rukin. See [43] and [47]. Counts I and II against Moonstone remain pending,[5] and on January 9, 2019 Moonstone filed its Renewed Rule 12(b)(6) Motion to Dismiss Counts I & II.

---

[5] Rukin also moved for sanctions, see [48], which the Court will address in a separate order.

## II.    Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint.  For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'"  *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017), reh'g denied (Jan. 19, 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)).  To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'"  *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).  The Court reads the complaint and assesses its plausibility as a whole.  See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  "The plausibility standard *** asks for more than a sheer possibility that a defendant has acted unlawfully."  *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The court need not "strain to find inferences favorable to the plaintiffs" which are not apparent on the face of the complaint. *Coates v. Illinois St. Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977).  Additionally, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 794 (7th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Similarly, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Nelson v. Monroe Regional Medical Ctr.,* 925 F.2d 1555, 1559 (7th Cir. 1991); *Evans v. Torres*, 1997 WL 587756 at *2 (N.D. Ill. Sept. 19, 1997).  Furthermore, the court may take judicial notice of public court documents when ruling on a motion to dismiss.  See *Collins v.*

*Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss" (citing *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016))); *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015) (court may take judicial notice of matters of public record without converting 12(b)(6) motion into motion for summary judgment).

A plaintiff need not anticipate affirmative defenses in its complaint, but it may "plead itself out of court" by "set[ting] forth everything necessary to satisfy the affirmative defense." *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005) (citing *Leavell v. Kieffer,* 189 F.3d 492, 495 (7th Cir.1999)); see also *Ogden Martin Systems of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir.1999) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.") (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)). Thus, affirmative defenses like res judicata and collateral estoppel may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6) if the "plaintiff has plead himself out of court "by alleging (and thus admitting) the ingredients of a defense." *Clark & Leland Condominium,* 110 F. Supp. 3d at 868.

## III.   Analysis

### A.   Res Judicata

The Court begins with Moonstone's argument that Plaintiffs' claims are barred by the doctrine of res judicata. The Court applies Illinois' law of res judicata to this diversity action. See *Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). Under Illinois law, "[t]hree requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Gurga v. Roth*, 964 N.E.2d

134, 140 (Ill. App. 2011); see also *Parungao*, 858 F.3d at 457; *Rose v. Bd. of Election Comm'rs for the City of Chicago*, 815 F.3d 372, 374 (7th Cir. 2016). If these requirements are satisfied, "the plaintiff is barred from raising 'not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit.'" *Parungao*, 858 F.3d at 457 (quoting *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011)).

There is now a final judgment in the Probate Case without any possible further appeal; neither petition for rehearing nor petition for leave to appeal to the Illinois Supreme Court was filed by their respective due dates. See [42]. Thus, the finality requirement of res judicata is satisfied.

This Court previously considered whether identity of causes of action existed between this case and the Probate Case. See [41] at 10-13. Its analysis and conclusions are now the same; the two lawsuits arise out of a single group of operative facts. "Plaintiffs' claims in this case arise from the same transaction at issue in the Probate Case: the sale of Leslie's sole proprietorship to Moonstone without compensating Leslie's estate." [41] at 12-13. Further, even if Barbara had not raised the Leslie Estate's entitlement to the value of Leslie's sole proprietorship in the Probate Case, it is evident that this issue could have been raised and decided, which is all that is required for purposes of applying res judicata. See *Parungao*, 858 F.3d at 457; *Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018); cf. *Gurga*, 964 N.E.2d at 140 ("[P]robate courts are courts of general jurisdiction and are empowered to hear and decide all justiciable matters."). The identity of causes of action requirement of res judicata is satisfied.

The remaining question is privity. Plaintiffs are in privity with the Leslie Estate (the plaintiff in the Probate Case) because they are beneficiaries of the estate. The Illinois Appellate

Court, relying on the RESTATEMENT (SECOND) OF JUDGMENTS, has explained that one of the "general categories of relationships that may establish privity" is "relationships that are 'explicitly representative,'" including in particular "the executor *** of an interest in which the nonparty is a beneficiary." *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 589 (Ill. App. 2009); see also *Diversified Financial Systems, Inc. v. Boyd*, 678 N.E.2d 308, 311 (Ill. App. 1997).

Moonstone, however, was not a party to the Probate Case. Moonstone argues that it has privity with the Lester Estate because, as parties to a contract, "the Lester Estate and Moonstone have identical interests with regard to those asset purchase agreements, including the protection of those agreements from the attempt by Barbara in both the Probate Case and here to effectively invalidate them." [54] at 7. Plaintiff counters that there is no privity between Moonstone and the Lester Estate because they are separate entities on opposites sides of a deal.

"With respect to the doctrine of res judicata, there is no generally prevailing definition of 'privity' which can automatically be applied to all cases; that determination requires a careful examination into the circumstances of each case." *Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 94 (Ill. App. 2004). However, privity generally exists "between parties who adequately represent the same legal interests." *Chicago Title Land Trust Cos*, 664 F.3d at 1080 (quoting *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992)); *Parungao*, 858 F.3d at 457. "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Chicago Title Land Trust Co.*, 664 F.3d at 1080 (quoting *Burris*, 602 N.E.2d at 826). "A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty." *City of Rockford v. Unit Six of Policemen's Benevolent & Protective Ass'n of Illinois*, 840 N.E.2d 1283,

1289 (Ill.App.Ct.2005) (quoting *Purmal*, 820 N.E.2d at 95); see also *Watkins v. CIT Grp./Consumer Fin., Inc.*, 2015 WL 831991 at *3 (N.D. Ill. Feb. 25, 2015).

Moonstone's interests are not so closely aligned to those of the Leslie Estate such that the Leslie Estate is or was the "virtual representative" of Moonstone. Typically, privity exists when parties have a relationship that allows one to control the other, or one to step into the shoes of the other. For example, Illinois courts have found privity between: officers of a corporation and the corporation (*Chicago Title Land Tr. Co,* 664 F.3d at 1080, citing *Atherton v. Conn. Gen. Life Ins. Co.*, 955 N.E.2d 656, 660 (Ill. App. 2011)); a union and a union member who was discharged by an employer (*City of Rockford*, 840 N.E.2d at 1290); a law firm and the president of the firm (*Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558 (7th Cir. 2014)); mortgagees and mortgage servicers, who acts as the agent of the mortgagee to collect payments on the mortgage (*Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 883 (7th Cir. 2017)); and a trustee and an attorney for the trust, both of whom had represented the interests of the trust (*McCarthy v. Abraham Lincoln Reynolds, III, 2006 Declaration of Living Tr.*, 2018 IL App (1st) 162478, ¶ 16, 104 N.E.3d 1275, 1280, reh'g denied (May 1, 2018), appeal allowed *sub nom. McCarthy v. Reynolds*, 108 N.E.3d 830 (Ill. 2018), and aff'd in part, rev'd in part on other grounds *sub nom. McCarthy v. Taylor*, 2019 IL 123622, ¶ 16).

Moonstone and the Lester Estate, as parties to a contract, do not appear to have this kind of relationship. Neither acted as the agent or representative of the other, nor controlled the other. However, Defendant does cite two cases suggesting that parties to a contract may have privity for res judicata purposes. First, Defendant cites *Agolf*, in which a commercial landlord and tenant separately sued the Village of Arlington Heights over the same local ordinance, which affected the leased property, and sought the same relief. *Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1131 (Ill.App. 2011). In that case, the court privity between the landlord and tenant in part

because of their "mutual relationship in property rights," specifically, the property that the landlord leased to the tenant. *Id.* Second, Defendant cites *Semb's, Inc*, in which two plaintiffs (DaLee's and Triple 7) who were parties to an exclusive contract, separately sued a defendant, GEM. *Semb's, Inc. v. Gaming & Entertainment Management-Illinois, LLC*, 12 N.E.3d 223 (Ill.App.3d 2014). First, Triple 7 sued GEM seeking to invalidated GEM's earlier exclusive contract with DaLee's. *Id.* at 224. GEM's motion to dismiss was granted. *Id.* Then DaLee's sued GEM seeking to invalidate GEM's earlier exclusive contract with DaLee's and also alleging fraud. *Id.* The trial court granted GEM's motion to dismiss, and the appellate court affirmed. The appellate court held that res judicata applied and found that "Da Lee's is in privity with the parties from the Triple 7 action, as Da Lee's interests were affected by our decision in Triple 7." *Id.* at 226.

The Court does not believe these cases support a finding of privity between Moonstone and the Lester Estate. *Agolf* is distinguishable; the court in that case found a "mutual relationship in property rights" that "clearly demonstrate[d] a legal interest that is so closely aligned that it amounts to privity between them." *Agolf*, 946 N.E.2d at 1134. Moonstone and the Lester Estate have no such mutual relationship in property rights. Nor is *Semb's* single, somewhat vague sentence regarding privity enough to support a conclusion that Moonstone's and Lester's Estate's interests are sufficiently aligned for the Court to apply the res judicata doctrine.

Even if *Agolf* and *Semb's* could be read to allow privity between parties to a contract, they would still be distinguishable from the case before the Court, because the parties are differently situated. In *Agolf* and *Semb's*, res judicata barred duplicative suits against the same defendant by different plaintiffs who were parties to a contract. Here, one plaintiff[6] has brought two separate suits against separate defendants who are parties to a contract. Because the parties are reversed—

---

[6] Technically, two plaintiffs in privity: Barbara as executor of the Leslie Estate in the probate case, and Barbara and Michelle as beneficiaries of the Leslie Estate in the federal case.

two plaintiffs with a contract in *Agolf* and *Wolf*, and two defendants with a contract in the instant case—it is not clear that any rule arising out of *Agolf* and *Wolf* would apply to Moonstone and the Lester Estate. The case law does not support a finding of privity between Moonstone and the Lester Estate, and that element of res judicata is not met.

### B. Collateral Estoppel

Collateral estoppel, also called issue preclusion, is an equitable doctrine that promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions. *Du Page Forklift Serv., Inc. v. Material Handling Servs.*, Inc., 195 Ill. 2d 71, 77, 744 N.E.2d 845, 849 (2001). Under Illinois law, "[c]ollateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to *** the prior adjudication." *Sanchez v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (quoting *Du Page Forklift*, 744 N.E.2d at 849).

First, Defendant must show that the issue decided in the Probate Case is identical to the one presented in the current action. The issue before this Court is whether, because of Lester and Moonstone's actions leading up to the sale, Plaintiffs are entitled to any value from the sales of assets from Lester to Moonstone. See [1] at ¶¶ 10, 12, 14-16, 46, 47, 50, 53, 56-60; 65-67. That same issue was addressed in the Probate Case. In both suits, the plaintiffs sought compensation for the loss of Barbara and Michelle's inheritance from Leslie, including the value of his sole proprietorship. Compare Plaintiffs' complaint in this case, [1] at 7, 10 (alleging that Plaintiffs "suffered damages as a result of the loss of [their] inheritance in the amount of $154,925.88"), with Barbara's appellate brief in the Probate Case, [26-1] at 17 (explaining that Barbara's expert opined that Leslie's sole proprietorship was worth $154,925.88). The complaint and the appellate

brief both assert, in identical words, that "Lester concealed his negotiations and eventual sale to Moonstone from Leslie's Estate." [1] at 3; [26-1] at 5. Adding more allegations about Moonstone's specific actions and saying those actions assisted Lester in concealing the sale does not generate a new and different issue. *Du Page Forklift Serv.,* 744 N.E.2d at 851 ("Offering somewhat different evidence on what is essentially the same claim will not bar preclusion here.") As this Court has already noted (see [41] at 12), these alleged facts simply add additional detail to Barbara's contention in the Probate Case that "Lester concealed his negotiations and eventual sale to Moonstone from Leslie's Estate" and "[a]s a result of Lester's treachery, Leslie's wife and daughter were left with nothing from Leslie's business while Lester and Rukin took the full benefit." [26-1] at 6. The underlying basis of the claims in both the probate case and the federal case is the behavior of Lester and Moonstone before and during the sales of assets from Lester to Moonstone.[7]

The Probate Court carefully considered this issue. It weighed evidence and testimony on Lester's request that Leslie's clients sign new Asset Management Agreements with him after Leslie's death [1] at 18. The Court noted that Moonstone entered into two Asset Purchase

---

[7] Compare with *Mancuso v. Lahman*, 2018 IL App (1st) 170185-U and *Savage v. Davis McGrath LLC*, 2014 IL App (1st) 120475-U. While unpublished and not precedential under Illinois Supreme Court Rule 23, the Court finds their relevant facts similar and their reasoning persuasive. In *Mancuso v. Lahman*, a probate judge ruled that a defendant did not unduly influence a testator to disinherit plaintiff, and a law division judge ruled that collateral estoppel bared the plaintiff's tortious interference claim, because it relied on the same issue that the probate judge had already ruled on. The Appellate Court affirmed. *Mancuso*, 2018 IL App (1st) 170185-U, ¶ 38. Similarly, the Illinois Appellate Court affirmed dismissal of fraud claims by a beneficiary of a will against attorneys who had represented the executor and trustee in a probate action where similar claims were previously raised against the estate's representative. *Savage*, 2014 IL App (1st) 120475-U ¶2. In the first case, plaintiff alleged the executor breached her fiduciary duties with regard to certain distributions to herself and certain distributions she had not made to plaintiff. The trial court found for plaintiff on some counts and for executor on others. Plaintiff then filed a second suit, asserting that a law firm and three attorneys who had represented the executor helped her breach her fiduciary duties. The trial court dismissed on collateral estoppel grounds. The Appellate Court affirmed, noting that the two complaints involved the same transactions and the same "underlying basis" of alleged breach of fiduciary duty. *Id*. at 9. The Appellate Court also noted "Because it has been determined that Savage is not entitled to further compensation from Elizabeth as a result of her conduct in connection with the administration of Ruthanne's estate, it necessarily follows that claims against Elizabeth's attorneys arising out of the same facts are foreclosed as well." *Id*. at ¶ 37.

Agreements, one with Lester and one with CPG. *Id.* The assets that Moonstone purchased included clients that had been on Leslie's client list before he died. *Id.* It assessed what duties Lester owed Leslie's estate and found that the only duty owed was buying out Leslie's share of the LLC pursuant to Illinois statute. *Id.* at 27. It also considered the other allegations about Lester's behavior after Leslie's death and in the lead up to the asset sales to Moonstone. Ultimately, the Probate Court determined that "All the arguments about LESTER stealing LESLIE'S clients, changing the locks, hiding the files, and not involving BARBARA in the future sale of the business amount to nothing." [26] at 27-28.

Plaintiff argues that collateral estoppel does not apply because "there was no determination as to the disposition of Leslie Mandelstein's Sole Proprietorship which is the only business at issue here." [56] at 3-4. It is true that the Probate Court's order states "This case is about CPG only, nothing has been pled about LESLIE's sole proprietorship." [1] at 25. However, switching businesses does not necessarily mean Plaintiffs have switched issues. Here, what matters is whether Lester and Moonstone's conduct after Leslie's death entitles Plaintiffs to proceeds from the sales from Lester to Moonstone. Unfortunately for Plaintiffs, there was a final determination on that issue. Specifically, the Probate Court determined that Lester owed no duties besides buying out Leslie's share of the LLC and that the allegations about his sales of assets to Moonstone "amount to nothing." *Id.* at 26-27. That alone is a sufficient basis to conclude that the issue in the present case was also before Probate Court.

In addition, the Probate Court's order and ruling makes clear that the Leslie Estate's entitlement to the value of Leslie's sole proprietorship was an issue in the Probate Case. Barbara argued in the probate proceeding that "the business" was a single "consolidated CPG," of which 50% was Leslie's share. [1] at 18. Barbara asked in the alternative, if the Probate Court did not

find that CPG included Lester and Leslie's sole proprietorships, for a finding that Leslie's sole proprietorship and 50% of CPG were worth a total of $191,425.88. [1] at 21. The Probate Court considered the issue and decided that the Business was not one "consolidated CPG" (as Barbara argued) but instead consisted of CPG (an LLC), Lester's sole proprietorship, and Leslie's sole proprietorship. Barbara argued on appeal that the Probate Court "erred in rigidly construing the pleadings and not at least finding the construction of the pleadings was waived," given that "Plaintiff's expert was allowed to opine without objection as to the value of Leslie's sole proprietorship" and "Plaintiff's pre-trial and post-trial briefs *** argued the value of Leslie's sole proprietorship." [26-1] at 32.

The Probate Court considered whether the plaintiff was entitled to proceeds of sales of assets from Lester to Moonstone and resolved that question. That is essentially the same question that Plaintiffs pose in this case. Thus, the identity of issues requirement for collateral estoppel has been met. See *Fried v. Polk Bros.*, 546 N.E.2d 1160, 1165 (Ill. App. 1989) (affirming dismissal on collateral estoppel in part because "a question material to the determination of both causes *** was decided in the probate proceeding contrary to the position taken by the heirs in the present cause.").

The second requirement for collateral estoppel is a final determination. Here, the Probate Court issued a ruling in the Probate Case on November 16, 2016. [1] at 30. The parties appealed, and the Illinois Appellate Court affirmed the Probate Court's ruling. *In re Estate of Mandelstein*, 2018 IL App (2d) 171009-U. The Leslie Estate did not file a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court before the respective deadlines. See [42]. Thus, there is a final judgment on the merits. See *Sanchez*, 880 F.3d at 357, citing *Ballweg v. City of*

*Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted.")

The last requirement for collateral estoppel is that the party against whom the estoppel is asserted was a party to the prior adjudication or in privity with such a party. See *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 38, citing *Talarico v. Dunlap*, 667 N.E.2d 570 (Ill. app. 1996), aff'd, 685 N.E.2d 325 (1997). As explained above, Plaintiffs are in privity with the Leslie Estate, the plaintiff in the Probate Case, because they are beneficiaries of the estate. *State Farm Fire & Cas. Co.*, 914 N.E.2d at 589.

Even when those requirements are met, collateral estoppel will not be applied if an injustice would result; therefore, the court must "determine [whether] the party against whom the estoppel is asserted had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding." *Talarico*, 667 N.E.2d at 572, aff'd, 685 N.E.2d 325 (1997) (citing *Bulfin v. Eli Lilly & Co.*, 614 N.E.2d 403, 407 (Ill. App. 1993)); see also *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013). "The full and fair opportunity to litigate requirement is satisfied so long as minimum due process standards are satisfied." *Charles Koen & Assocs. v. City of Cairo*, 909 F.2d 992, 1000 (7th Cir. 1990). The Probate Court's ruling and the Leslie Estate's appellate briefs demonstrate that the Leslie Estate vigorously pursued its claims at both the trial level and the appellate level. See *Sanchez*, 880 F.3d at 358 (citing *Raper v. Hazelett & Erdal*, 449 N.E.2d 268, 271 (Ill. App. 1983)) ("[C]ourts generally hold the 'full and fair opportunity to litigate' requirement to be satisfied if the parties to the original action disputed the issue and the trier of fact resolved it."). Plaintiffs have not presented, and the record does not reveal, any denial of due process to the Leslie Estate. The Court concludes that no injustice would result from the application of collateral estoppel in this case. Collateral estoppel precludes Plaintiff from

relitigating in federal court against Moonstone the issues it raised in Probate Court against the Lester Estate, and the Complaint will be dismissed.

### C.    Failure to State a Claim: Tortious Interference

Even if collateral estoppel did not bar the suit, dismissal of Count I would be appropriate because Plaintiffs fail to state a claim for tortious interference.  In general, "[o]ne who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that she would otherwise have received is subject to liability to the other for loss of the inheritance or gift." *Bjork v. O'Meara*, 986 N.E.2d 626, 631 (Ill. 2013), citing *In re Estate of Ellis*, 923 N.E.2d 237, 241 (Ill. 2009). To state a claim for tortious interference, Plaintiffs "must establish the following distinct elements: (1) the existence of an expectancy; (2) defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages." *In re Estate of Ellis*, 923 N.E.2d at 241.

Plaintiffs have not established the third element, that Moonstone's conduct was tortious in itself.  First, neither revising nor executing a purchase agreement is a tortious act.  See [1] at 7, ¶ 50 a and b.  Second, Plaintiffs' bare assertion that Moonstone paid Rukin to transfer Leslie's sole proprietorship to Moonstone is contradicted by the documents Plaintiffs submitted with the Complaint, and thus is not well-pled. See *id.* at 7, ¶ 50 c.  Where the terms of a contract attached to a complaint conflict with the complaint, the contract controls.  *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); see also *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 848 (N.D. Ill. 2008).  Here, the Purchase Agreement for Lester's sole proprietorship directs Moonstone to pay Lester, not Rukin (see [1] at 36), and the Purchase Agreement for CPG directs Moonstone to pay CPG, not Rukin (see [1] at 46).  The allegation that

Moonstone paid Rukin conflicts with the Purchase Agreements, so the Purchase Agreements control, and that allegation is not well-pled, much less tortious. See *id.* Finally, Plaintiffs allege that Moonstone "concealed" the sale of Leslie's sole proprietorship from Plaintiffs (*id.* at 7, ¶ 50 a and d) and that Moonstone's conduct was fraudulent (*id.* at 7, ¶ 51). However, Plaintiffs do not allege facts to support an inference that Moonstone concealed anything from Plaintiffs, such as false statements Moonstone made to Plaintiffs, or material omissions from otherwise true statements, or any disclosure obligations that Moonstone had but failed to meet. In addition to being insufficiently pled, these vague allegations "fail to meet the strict contours of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to plead fraud with particularity." *Singer v. Massachusetts Mut. Life Ins. Co.*, 335 F. Supp. 3d 1023, 1032 (N.D. Ill. 2018); see also *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."). Even in the light most favorable to Plaintiffs, the acts that Plaintiffs have sufficiently pled are not tortious, and the remaining acts have not been sufficiently pled. In the absence of any proper allegations of tortious conduct, the tortious interference claim must be dismissed. See *Singer*, 335 F. Supp. 3d at 1033.

Is possible that Plaintiffs intended to base the tortious interference claim on the assertions that "As members of CPG and co-owners of the Business, Lester and Leslie owed one another fiduciary duties" ([1] at 3) and that "Moonstone knew it was assisting Rukin and Lester in breaching their fiduciary duties to Leslie's Estate" (*Id.* at 5). Yet the Probate Court held that "Lester did not owe Leslie any fiduciary duty as a member of CPG after Leslie died except to buy out Leslie's interest pursuant to statute," and that "[a]ll the arguments about Lester stealing Leslie's clients, changing the locks, hiding the files and not involving Barbara in the future sale of the

business amount to nothing." Id. at 27-28. If Lester owed no fiduciary duty to the Leslie Estate, then he could not have committed a breach of fiduciary duty to the Leslie Estate, and Moonstone could not have assisted in committing any breach. Considering the Probate Court's findings, which Plaintiff attached to the Complaint, the allegations that Moonstone aided in a breach of fiduciary duties to Plaintiffs are not well pleaded and do not state a claim for tortious interference.

Because Plaintiffs fail to adequately plead the third element, it is not necessary to review the remaining requirements. However, the Court notes that the second element, intentional interference with an expectancy, also poses problems for Plaintiffs. Even taking the allegations in the Complaint as true, if Lester's alleged conduct—"stealing" Leslie's clients, changing the office locks, hiding Leslie's files and not involving Barbara in the future sale of the business—"amount to nothing," then it is difficult to conclude that Moonstone's role in the transaction as a buyer constitutes intentional interference. *See* [1] at 27-28.

### D. Failure to State a Claim: Unjust Enrichment

To state a claim for unjust enrichment under Illinois law, "a complaint must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *A.P. Properties, Inc. v. Rattner*, 960 N.E.2d 618, 621 (Ill. App. 2011) (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989)). To recover under a theory of unjust enrichment, a plaintiff "must show that defendant voluntarily accepted a benefit which would be inequitable for [it] to retain without payment." *Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*, 735 F.3d 549, 559 (7th Cir. 2013), citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992).

Whether unjust enrichment is an independent cause of action or whether it must be tied to an underlying claim in tort, contract, or statute is unsettled in Illinois. Compare *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004) ("Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment."), with *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 2009) ("[U]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). In attempting to reconcile the apparent inconsistencies, the Seventh Circuit has suggested:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute.

*Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011), reh'g and suggestion for reh'g en banc denied (Nov. 15, 2011). Thus, if an unjust enrichment claim is based on the same underlying conduct that forms the basis of a claim in contract, tort, or statute, "then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id*; see also *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 923 (N.D. Ill. 2013).

Here, Plaintiff's unjust enrichment claim as pled rests on the same conduct as the tortious interference claim. Count II (Unjust Enrichment) asserts that "Moonstone has benefitted from receiving Leslie's sole proprietorship without paying anything to Leslie's heirs" and that "Plaintiff's conferred a benefit on Moonstone by Leslie's sole proprietorship being transferred to Moonstone without their knowledge." [1] at 8. Count I (Tortious Interference) similarly alleges that Moonstone "[p]urchas[ed] Leslie's sole proprietorship without paying full value for it" and

negotiated and executed the purchase of assets from Lester in a way that concealed the sale from Plaintiffs. *Id.* at 9. Thus, Plaintiff's unjust enrichment claim stands or falls with the tortious interference claim. *Id.* For the reasons discussed above, Plaintiffs failed to adequately plead their tortious interference claim. As a result, the Complaint also fails to state a claim unjust enrichment claim. See, *e.g.*, *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

It is possible that Plaintiffs intended to base the unjust enrichment claim on their assertions that Lester owed and breached fiduciary duties Plaintiffs and that Moonstone assisted Lester in breaching those duties. See [1] at 4, 5. However, as discussed above, Lester owed no fiduciary duty to the Leslie Estate, and Moonstone therefore could not have assisted Lester in committing any breach of fiduciary duty. Considering the Probate Court's findings, which Plaintiff attached to the Complaint, the allegations that Moonstone aided in a breach of fiduciary duties to Plaintiffs are not well pleaded and do not state a claim for unjust enrichment.

## IV. Conclusion

For these reasons, Plaintiffs' claims against Moonstone are barred by collateral estoppel, and the Complaint fails to state a claim for tortious interference or unjust enrichment. Moonstone's motion to dismiss for failure to state a claim [54] is granted, and the Complaint [1] is dismissed with prejudice. Civil case terminated.

Dated: August 16, 2019

Robert M. Dow, Jr.
United States District Judge

23